UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| vs. | Criminal No. 19-cr-10234-FDS |
| JOHANNY MEJIA-NUNEZ, | |
| Defendant. | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR REVIEW OF PRETRIAL DETENTION ORDER

The United States of America opposes defendant Johanny Mejia-Nunez's Motion to Revoke Pretrial Detention Order and Place the Defendant on Conditions of Release. DE 25 (hereinafter, the "Defendant's Motion").[1]  After a detention hearing, the Magistrate Judge found, by clear and convincing evidence, that the defendant is a danger to the community and, by a preponderance of evidence, that he poses a risk of flight, and that there are no conditions that can assure the defendant's appearance or the safety of any other person and the community. Based on these findings, the defendant was ordered detained. Based on the record from that hearing, this Court should deny the defendant's Motion and the defendant should remain in custody pending trial.

## FACTUAL BACKGROUND

### A.  Arrest & Detention of the Defendant

On January 11, 2019, law enforcement arrested the defendant pursuant to a criminal complaint, charging him with possession with intent to distribute four hundred (400) grams or

---

[1] The Magistrate Judge's Order of Detention is attached to the defendant's Motion as Attachment 1 (DE 25-1).

more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vi).  DE 1.  At the defendant's initial appearance the following day, June 12, 2019, the government moved for detention pursuant to dangerousness and risk of flight.  18 U.S.C. §§ 3142(f)(1)(E), (f)(2)(A).  The Magistrate Judge scheduled the case for a detention hearing on June 18, 2019, and remanded the defendant to the custody of the US Marshals pending that hearing.  DE 3.  On June 18 and 25, 2019, the Magistrate Judge held a preliminary hearing to determine probable cause and detention.[2]  Special Agent Dean Levangie of Immigration and Customs Enforcement, Homeland Security Investigations (ICE-HSI), testified for the government.  At the conclusion of the second part of the hearing on June 25, 2019, the Magistrate Judge took the matter of detention under advisement.

On June 26, 2019, the Magistrate Judge issued an Order of Detention Pending Trial. DE 17.  The court found two independent and sufficient bases for detaining the defendant pending trial.  The court found that the Government had proven:

- by clear and convincing evidence, that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community; and

- by a preponderance of evidence, that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

**B.  Offense Conduct**

In May 2019, an undercover officer ("UC") and confidential informant ("CI") were in communication with a Mexican national drug supplier of narcotics into the United States. Transcript of June 18, 2019 Detention Hearing ("Det. Tr.") at 11. The CI communicated to the

---

[2] At the conclusion of the June 18, 2019 hearing, the Magistrate Judge found that the government had demonstrated probable cause.

Mexican national that he was in Massachusetts and that he wanted to purchase fentanyl. The Mexican national indicated there would be a large shipment of twenty-eight (28) kilograms being delivered to that area in the near future. *Id*. In further discussions, the Mexican national advised the CI and the UC that a driver would be transporting the drugs to Massachusetts on June 11, 2019 after an earlier shipment date was cancelled. Det. Tr. at 15. Law enforcement ultimately decided to postpone the transaction until June 12, 2019. Det. Tr. at 17-18. The CI was first put in contact with the driver on June 11, 2019. During this conversation, the UC asked the driver, later identified and hereinafter referred to as the defendant, "are you bringing me fentanyl?" to which the defendant responded "yes." Det. Tr. at 18. When asked how much he was bringing, the defendant responded "I'm bringing five vehicles," which, according to SA Levangie, law enforcement understood to be code for five kilograms of fentanyl, the agreed upon quantity. *Id*. The defendant also advised that there would be a second vehicle accompanying him to the deal and that he wanted the money to go in the second vehicle. Det. Tr. at 22.

At approximately 12:15pm on June 12, 2019, a gold vehicle driven by the defendant followed by a blue vehicle driven by a female arrived at the meeting location, a hotel parking lot in Lawrence, MA, previously designated by the CI and UC. Affidavit in Support of Criminal Complaint (DE 1) (Comp. Aff.") at ¶ 5. The CI approached the defendant as he was seated in the driver's seat of the gold vehicle and asked if he had the kilograms of fentanyl to which the defendant responded that he did. Det. Tr. at 26. The CI asked if it was all "China White," to which the driver responded "yes, all five." *Id*. Agent Levangie further testified that China White was the code word and also the street term for fentanyl. *Id*. The CI then asked to see the drugs, at which point, the defendant reached behind his seat, removed a jacket which was sitting on a duffel bag, opened the bag and revealed what appeared to the CI to be wrapped kilograms of narcotics. *Id*.

The CI then did as previously instructed by law enforcement and stepped away from the vehicle and contacted the UC advising that he/she had seen the drugs. This in turn led the UC to give the arrest signal over the radio to the other members of law enforcement on scene. Det. Tr. at 28. The blue car that had followed the defendant into the parking lot was found to contain a young, Hispanic female driver and her five or six year old son. Det. Tr. At 38.

The defendant was read his *Miranda* rights in Spanish and he agreed to speak with law enforcement. Comp. Aff." at ¶ 6. He identified himself as Johanny Mejia Nunez and advised that he is a lawful permanent resident, that he resides in Philadelphia, and that he has been in the United States for fifteen (15) years. *Id*. When asked how he became involved in trafficking drugs to Massachusetts, the defendant claimed that while working as an Uber driver, one of his passengers asked him if he wanted to make money by driving drugs to Massachusetts and the defendant agreed to do so. *Id*. The passenger told the defendant that he would need to travel to New York to pick up narcotics and then deliver them to Massachusetts. *Id*. In exchange, the defendant was to receive a total of $5000. *Id*. Thereafter, the plans were finalized and according to the defendant, he left his home in Philadelphia at approximately 3:00 am on July 11, 2019 and drove to a Dunkin Donuts in New York where an unknown Mexican handed him the bag containing five kilograms of what he believed to be drugs. *Id*.

The defendant was asked about the blue car that followed his gold car into the parking lot of the meeting location, and he advised that was his niece who lives in Lawrence and that he had asked her to follow him to the meeting location. Comp. Aff. at ¶ 6. According to the defendant, he was going to have the money put in his niece's car but that she did not know that was his plan, nor did she know that he was engaging in a drug transaction or any illegal activity in the parking lot. *Id*.

4

**ARGUMENT**

The standard of review for pretrial detention orders under 18 U.S.C. § 3145(c) is "independent review" coupled with "deference to the determination of the [lower] court." *United States v. Jones*, 201 F.3d 429, 1999 WL 668516, **2 (1st Cir. 1999) (discussing standard of review on appeal from district court order that affirmed magistrate court order of detention); *see also United States v. O'Brien*, 895 F.2d 810, 812-14 (1st Cir. 1990) (formulating that standard of review as matter of first impression in this circuit); *United States v. Rojas*, 2005 WL 6312587 (D. Mass. 2005) (Saylor, J.) (applying identical standard to district court's review of detention order issued by Magistrate Judge*). See generally United States v. Tortora*, 922 F.2d 880, 882 (1st Cir. 1990) ("We approach our task mindful of our obligation to afford independent review, tempered by a degree of deference to the determinations made below.") Thus, if the record supports the Magistrate Judge's determination  that there is clear and convincing evidence that no condition or combination of conditions  will reasonable assure the safety of the community or  that no condition or combination of conditions will reasonably assure the appearance of the person as required (by a preponderance), then the defendant should remain detained.  See 18 U.S.C. § 3142(e).  *See also United States v. Foley*, 2009 WL 458558, *2-3 (D. Mass. 2009) (Stearns, J.)("Consistent with the flexible standard endorsed in *Tortora*, I conclude that it is appropriate to confine de novo review of a detention order to the record created by the Magistrate Judge where his or her findings have clear support in the underlying record.  . . . .  As the Court of Appeals defers respectfully to the credibility  determinations of a first-instance court, so it is appropriate for this court to defer to the credibility findings of the Magistrate Judge[.]").

Here, Magistrate Judge Boal concluded, after a thorough and lengthy evidentiary hearing, that the defendant was both a danger to the community and a risk of flight. DE 17: 2-3. The

government respectfully submits that this conclusion has ample support in the record and that the order of detention should therefore be affirmed.

In considering this motion, the Court must determine whether any condition or combination of conditions will reasonably assure the defendant's future appearances in court and "the safety of any other person and the community."  18 U.S.C. § 3142(e) (1) (emphasis added).  A finding of danger to the community must be supported by "clear and convincing evidence," 18 U.S.C. § 3142(f), while a finding of risk of flight need be based on no more than a preponderance of the evidence, *see United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991).

Because the Magistrate Judge found probable cause that the defendant committed a controlled substance offense with a maximum term of imprisonment of ten years or more, a rebuttable presumption of danger and flight exists. *See* 18 U.S.C. § 3142(e). Without credible evidence to rebut the presumption, the presumption alone may justify detention. *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). The Magistrate Judge concluded after the evidentiary hearing that no conditions could be set that would reasonably assure the appearance of the defendant and the safety of the community. DE 4-5. The court based its conclusion on several factors.  These factors included (1) the nature of the present charges, specifically the significant amount of fentanyl involved, more than five (5) kilograms, and (2) the history and characteristics of the defendant, including the fact that the defendant was born in the Dominican Republic, entered the United States illegally in 2003, and after obtaining fraudulent identification documents, illegally remained in the United States until 2013.  In addition, the court found it concerning that the firearm subsequently recovered by law enforcement from the defendant's residence was loaded with hollow point bullets. DE 17: 3-4. *See also*, 18 U.S.C. § 3142(g); *United States v. Patriarca*, 948 F.2d at 792 n.2) "[D]anger to the community does not refer only to the risk of physical

violence."); *United States v. Cook, 880* F.2d 1158, 1161 (10th Cir. 1989) ("Safety of the community 'refers to the danger that the defendant might engage in criminal activity to the detriment of the community.'") *Id.* (quoting from Senate Report No. 98-225 on the Comprehensive Crime Control Act of 1984).

Based on the review of the record and the facts before the court, including the evidence, the parties' arguments at the hearing and the Pretrial Services Report recommending detention, Magistrate Judge Boal ordered the defendant detained pending trial. DE 17: 2-3.  The court determined that the defendant was a risk of flight based on the significant jail time and deportation consequences he faces if convicted. DE 17: 4. The court further determined that the defendant was a danger to the community based on the specific charge faced by the defendant, that being narcotics trafficking, a crime which is encompassed within Congress' definition of danger to the community. As stated above, the court further found it concerning that the firearm purchased and owned by the defendant was loaded with hollow point bullets. *Id.*

The government respectfully submits that the court's decision to detain the defendant pending trial based on the aforementioned factors has ample support in the record and that the order of detention should therefore be affirmed. The defendant transported more than five (5) kilograms of fentanyl from New York to Massachusetts, a charge which carries a maximum term of ten years or more and in fact, carries a minimum mandatory term of imprisonment of ten (10) years. This factor alone supports the court's decision to detain the defendant, as it establishes the presumption of danger and flight. *See Alatishe* at 371.

However, the reasons to detain the defendant go beyond the threshold established by the rebuttable presumption. A review of the evidence established at the detention hearing reveals the

true history and characteristics of this defendant and demonstrates his utter disregard of the law, such that releasing him before trial creates both a risk of danger and flight.

As established through SA Levangie's testimony, the defendant came to the United States illegally in 2003. Det. Tr. at 48-49. For ten years, the defendant remained in the United States under false pretenses, using fake immigration documents to fraudulently obtain legal permanent resident status until apprehended. *Id*. But for this arrest and the decision of an immigration judge to allow him to gain legal permanent resident status despite having lived illegally in the United States for 10 years until caught, the defendant would have continued to perpetrate this fraud.

Within one year of being given this second chance by the immigration court, the defendant purchased a .45 caliber Sig Sauer firearm, which, when recovered from his Philadelphia residence, was loaded with a full magazine of hollow point ammunition. While it is not illegal to own the firearm or the hollow point bullets in Pennsylvania, many states have outlawed owning even a single hollow point bullet given their deadly purpose.

Then in June 2019, the defendant chose to commit the serious and dangerous crime of drug trafficking a very significant amount of a deadly drug, fentanyl. By choosing to engage in this illegal conduct, the defendant demonstrated the danger he poses to others and his utter lack of regard for the laws of the country within which he has been permitted to reside. The government submits that the massive amount of fentanyl transported by the defendant into Massachusetts is a quantity sufficient to wipe out an entire community. In addition to the danger caused by introducing such a large amount of fentanyl into our state, when the defendant chose to put his niece and her toddler-aged son in the middle of his illegal and risky conduct, he showed a blatant and total disregard for the safety of others, even those in his own family.

These facts, which evidence the defendant's refusal to adhere to the law, demonstrate that he is not only a danger to the community, but that he also poses a risk that he would disregard any conditions of release if set by the court. In determining whether detention is appropriate, a record of repeated disregard of the law should be considered when evaluating whether a defendant will abide by an order of the court.

## CONCLUSION

Because the defendant is a danger to the community and a risk of flight, the Government respectfully requests that the Court deny the Defendant's Motion to Revoke the Pretrial Detention Order and Place the Defendant on Conditions of Release.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     /s/ Corey Steinberg
        Corey Steinberg
        Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Corey Steinberg
Corey Steinberg
Assistant United States Attorney

Date: September 10, 2019