UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| vs. | Criminal No. 19-cr-10234-FDS |
| JOHANNY MEJIA-NUNEZ, | |
| Defendant. | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this sentencing memorandum in the case against defendant Johanny Mejia Nunez, who pled guilty to a one-count indictment charging him with possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Based on the sentencing factors articulated in 18 U.S.C. § 3553(a), the United States is recommending a sentence of 51 months, the low end of the advisory sentencing guidelines as set forth in the PSR, to be followed by three years of supervised release.

Although this case involved a very significant quantity of fentanyl, a highly dangerous drug, the government submits that a sentence at the lowest end of the guidelines is appropriate given the defendant's criminal history category, the circumstances surrounding the defendant's involvement in the situation leading to his arrest and conviction, and the overall history and characteristics of the defendant.

### 1.    The Sentencing Guidelines

The government agrees with U.S. Probation's calculations of the advisory sentencing guidelines, as set forth in the PSR, including the defendant's total offense level and criminal history category. Although defendant has outlined in his sentencing memorandum why he believes a 4-

level minimal role adjustment is warranted, the government submits that the 2-level adjustment

for minor role is most appropriate in this case.

Application of §3B1.2 turns primarily on the defendant's particular role in the criminal

activity, specifically whether he was a "minimal" or "minor" participant.   The determination

whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the

totality of the circumstances and involves a determination that is heavily dependent upon the facts

of the particular case. *See* USSG §3B1.2, comment. (n.3(C)).

> To qualify as a minimal participant, a defendant must prove that he is among the
> least culpable of those involved in the criminal activity. In our view, this entails
> proof that he is substantially less culpable than his cohorts in the actual offense and
> that he is substantially less culpable than the vast majority of those taking part in
> similar crimes. *See* USSG § 3B1.2, cmt. (nn.3(A), 4, 5); *see also United States v.*
> *Kerr,* 13 F.3d 203, 206 (7th Cir.1993) (refusing reduction for minimal participation
> where defendant did not prove that she was substantially less culpable than the
> average participant in similar crimes); *United States v. De La Cruz*, 996 F.2d 1307,
> 1314 (1st. Cir. 1993) (giving as examples of a minimal participant "someone who
> played no other role in a very large smuggling operation than to offload part of a
> single marijuana shipment" or someone who "was recruited as a courier for a single
> smuggling operation involving a small amount of drugs") (*quoting* USSG § 3B1.2
> cmt. (n.2)). In short, a defendant must be a plainly peripheral player to justify his
> classification as a minimal participant.   This standard is hard to meet and,
> accordingly, it will be the rare case in which a defendant will warrant designation
> as a minimal participant. *See* USSG § 3B1.2, cmt. (n.4). That is especially so since
> a defendant who seeks a downward role adjustment bears the burden of proof on
> that issue. *United States v. Ocasio*, 914 F.2d 330, 332-33 (1st Cir.1990).

*United States v. Santos*, 357 F.3d 136, 142 (1st.Cir. 2004).  Taking into account the sizable quantity

and the significant dangerousness of the drug transported by the defendant,[1] the not-so-

insignificant fee the defendant expected to collect for the job, and the defendant's decision to

---

[1] Fentanyl is especially dangerous because it is roughly 50 times more potent than heroin and 100
times more potent than morphine and acts quickly due to rapid uptake in the brain. *See*
https://www.drugs.com/illicit/fentanyl.html.

involve his niece, a far more minimal participant than he, in his criminal activity, the government submits that a 2-level reduction for minor role is appropriate.

If the 2-level adjustment is used, the Total Offense Level is 24. PSR ¶¶ 29, 73. The defendant has no prior convictions, and as a result, falls in criminal history category I. PSR ¶ 34. Based upon a Total Offense Level of 24 and a criminal history category I, the advisory guideline range would be 51-63 months. PSR ¶ 73.

**2.      The Recommended Sentence**

As set forth above, the government is asking the Court to sentence the defendant to the low end of the advisory guideline range as set forth in the PSR, or 51 months.  The government would also ask that this period of incarceration be followed by three years of supervised release.

**3.      Basis for the Recommendation**

Consideration of the § 3553(a) factors demonstrates that a sentence of 51 months is sufficient, but not greater than necessary, to meet the goals of sentencing.

**A.      Nature of the Offense**

Fentanyl is a deadly drug that has wreaked havoc in the United States, and more specifically in Massachusetts, over the past several years.  Fentanyl is an extremely potent synthetic opioid that has become increasingly intertwined with heroin, both literally as an additive to make heroin more potent and in terms of the marketplace.  Massachusetts has been one of the states hardest hit by the opioid crisis and has been among the states with the highest rates of opioid-related overdose deaths. The epidemic is real and being felt every day by families across Massachusetts and New England.

In arguing that he was unaware that he was transporting fentanyl as opposed to another illegal narcotic, the defendant seeks to distance himself from the deadly dangers posed by the drug

as well as the significant quantity he was responsible for transporting. Had this not been a controlled transaction with law enforcement on the receiving end of the delivery, there is no telling how many people's drug habits would have been fed by the defendant's illegal conduct and no way to calculate how much harm such a massive influx of fentanyl would have brought into the state and upon its users and their loved ones.

### B.    Characteristics of the Defendant

The defendant is 44 year's old. PSR ¶ 39. He was born and raised in the Dominican Republic and entered the United States illegally through Mexico in October 2003 at the age of 27 after obtaining fraudulent identification documents. PSR ¶¶ 39-40. He illegally remained in the United States until 2013 when he was flagged and stopped as he returned from a trip to the Dominican Republic, was placed in removal proceedings, but was ultimately granted legal permanent residence status. PSR ¶¶ 40. The defendant will likely be deported after serving his prison sentence. PSR ¶ 44. The defendant was employed and supporting his wife and children up until his arrest in this case. PSR ¶¶ 51-52, 62-67.

### C.    Specific and General Deterrence

A significant sentence of imprisonment is warranted to generally deter others from becoming involved in trafficking of controlled substances, specifically fentanyl, as the dangers associated with this deadly drug cannot be overstated. Individuals tempted to engage in drug trafficking must understand that any involvement with fentanyl, no matter how slight, will have immediate and harsh consequences. Imprisonment is necessary to send a strong warning to others who might otherwise consider profiting from this criminal behavior, no matter the reasons for doing so.

Considerations of specific deterrence also support imposition of a substantial period of incarceration.  The defendant entered this country for a better future for himself and his family. He was given a chance few receive when, after illegally entering and re-entering the United States for many years and ultimately getting caught and facing removal proceedings, he was granted LPR status.  Following that, it appears that the defendant worked hard and legitimately for many years, loving and supporting his family.  But he made a terrible decision when he chose to transport illegal narcotics, and the excuse or explanation of willful blindness to the type or quantity of controlled substance he was transporting can only be stretched so far.  The defendant does however seem to be very remorseful for that choice. The sentence recommended by the government is hopefully sufficient to deter him from making that choice again, despite any difficult circumstances he may face.

## CONCLUSION

In seeking to take into account the various factors set forth in § 3553(a), the government recommends that the Court sentence the defendant to 51 months in prison to be followed by a term of supervised release of three years, and that the defendant be ordered to pay a mandatory special assessment of $100.


Respectfully submitted,

ANDREW E. LELLING
United States Attorney


By:    */s/ Corey Steinberg*
Corey Steinberg
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/ Corey Steinberg</u>
Corey Steinberg
Assistant United States Attorney

Date: January 5, 2020